# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

LISBETH SPILLAR,                     )
                                     )
                Plaintiff,           )
                                     )
vs.                                  )     Case No. 4:08CV0297 CAS/AGF
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
                Defendant.           )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before this Court for judicial review of the final decision of the

Commissioner of Social Security denying Plaintiff Lisbeth Spillar's applications for

disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-

434, and supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381-

1384f. The action was referred to the undersigned United States Magistrate Judge under

28 U.S.C. § 636(b) for recommended disposition. For the reasons set forth below, the

Court recommends that the decision of the Commissioner be reversed and that the case be

remanded for further development of the record.

Plaintiff, who was born in November 1960, applied for disability benefits on July

29, 2002, alleging that she became disabled on June 15, 2000, at the age of 39, due to

scoliosis. After her applications were denied at the initial administrative level, Plaintiff

requested a hearing before an Administrative Law Judge ("ALJ"), and such a hearing was

held on October 16, 2003.  By decision dated April 26, 2004, the ALJ found that Plaintiff

was not disabled.  (Tr. at 131-36.)  Upon Plaintiff's request for review, the Appeals

Council of the Social Security Administration vacated the ALJ's decision and remanded

the case to the ALJ for further evaluation of Plaintiff's work activity since her alleged

disability onset date, and for creation of a complete record, as the transcript from the

October 16, 2003 hearing had been lost.  Id. at 124-26.

A new hearing was held before a different ALJ on August 28, 2006, at which

Plaintiff and a vocational expert ("VE") testified.  On October 26, 2006, the second ALJ

determined that Plaintiff was not disabled as defined by the Social Security Act.  Plaintiff

requested review by the Appeals Council and submitted new evidence for the Appeals

Council to consider.  On January 18, 2008, the Appeals Council denied Plaintiff's request

for review.  Plaintiff has thus exhausted all administrative remedies and the ALJ's

decision of October 26, 2006, stands as the final agency action now subject to judicial

review.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in

the record.  Specifically, Plaintiff argues that the ALJ's assessment of Plaintiff's residual

functional capacity ("RFC") is not supported by medical evidence and that the ALJ

improperly failed to consider the opinion of a physician (Patricia Inman, M.D.) that

Plaintiff was disabled.  Plaintiff also argues that the ALJ's reliance upon the VE's

testimony that there were jobs an individual such as Plaintiff could perform was improper

because the testimony was in response to a hypothetical question that did not capture the true extent of Plaintiff's impairments.

**<u>Work and Earnings History and Application Forms</u>**

In her Work History Report, dated August 2, 2002, Plaintiff indicated that she had worked from March 1984 to June 1998 as a sales associate-cashier, and from February to June 2000 as an assistant manager at a store. In both jobs, she helped stock boxes of merchandise in a warehouse. <u>Id.</u> at 100-02. Plaintiff's earning records show that from 1990 through 1997, she earned from approximately $11,000 to approximately $17,000 per year. In 1998 and 1999 her earnings were minimal. In 2000, she earned $4,854.76. <u>Id.</u> at 62. The following additional earnings information is not disputed: No income was reported for 2001 and 2002 and in 2003, income of approximately $2,300 was reported for the second half of the year. In 2004, Plaintiff earned approximately $8,400. Her last earnings were $2,500 for the first quarter of 2005.

In a Claimant Questionnaire, also completed on August 2, 2002, Plaintiff wrote that pain in her upper and lower back, a condition which had gotten worse as she got older, made it difficult for her to stand or sit for a long time and to bend. She wrote that she used a heating pad for temporary relief of her symptoms, and that she was not taking any prescribed medication because she did not have insurance coverage. Plaintiff stated that she fell asleep fairly easily at night, but would wake once during the night due to her back pain. She cooked one meal a day; went grocery shopping, needing help carrying

heavy items; and did household chores like cleaning, laundry, and ironing, but avoided standing in one position for a long time, stooping, or bending over. Id. at 78-81.

In the Adult Disability Report section of her application for benefits, Plaintiff wrote that she left her last job, assistant manager in retail sales, on June 15, 2000, due to lack of transportation to get to work after she was transferred to a different site 24 miles from her home. Id. at 108-09.

**Medical Record**

The earliest medical evidence in the record is the September 16, 2002 report of consultant Sarwath Bhattacharya, M.D., who examined Plaintiff on that date at the request of the state disabilities determination agency. According to Dr. Bhattacharya's report, Plaintiff represented that she had had back pain for several years and that she had left her job as an assistant manager in June 2000 because of the back pain and being unable to stand for prolonged periods of time. Plaintiff reported that she had had a spinal deformity since high school, but never had treatment for it. As she was getting older, however, it was getting worse. Plaintiff stated that she had been told that nothing could be done about the problem except, perhaps, very extensive surgery. She said that she could walk three blocks, stand three hours, sit for two to three hours, lift ten pounds, and bend. She did not use a cane or crutch and did exercises off and on, but had had no physical therapy and no x-rays were ever taken of her back. Plaintiff reported that she lived with her 24-year-old son and did most of the housework. (Tr. at 123A).

On physical examination, Dr. Bhattacharya observed that Plaintiff appeared to be in no acute distress, that Plaintiff's gait was normal, and that she could walk on heels and toes and touch her toes. Squatting was asymmetric, Plaintiff had no difficulty getting on and off the examination table, straight leg raises were within normal limits, she had dexterous movement of her fingers for gross and fine manipulation, and hand grips were 5/5. Plaintiff had good range of motion in all extremities. Dr. Bhattacharya noted that Plaintiff had a kyphoscoliotic deformity[1] starting between the upper scapular area of the back and ending in the upper lumbar area. There was some crowding of the ribs in the chondro-lateral side and some tenderness in the right side of the thoracic and L-spine areas. Plaintiff's neurological examination was unremarkable, with no sensory loss. Plaintiff reported back pain constantly radiating to the upper lumbar spine and pain in her knees "off and on," which was increasing with age. Id. at 123B-123C. An x-ray taken that day of Plaintiff's thoracic spine showed moderate thoracic curve convex to the right side, centered at the T-9 vertebra. Id. at 123D.

On October 15, 2002, a non-medical state consultant completed a Physical RFC Assessment form, indicating that Plaintiff could occasionally lift 20 pounds, frequently lift ten pounds, stand and/or walk for a total of two hours in an eight-hour workday, sit (with normal breaks) for a total of six hours in an eight-hour workday, and had to

---

[1] Kyphosis is an "abnormally increased convexity in the curvature of the thoracic spine as viewed from the side; hunchback." Dorland's Illustrated Medical Dictionary at 890 (29th ed. 2000).

periodically alternate sitting and standing to relieve pain due to marked kyphoscoliosis. The consultant indicated that Plaintiff had no limitations pushing or pulling, no postural limitations such as stooping or couching, and no manipulative, visual, communicative, or environmental limitations. The consultant added that in a telephone conversation with Plaintiff (on October 11, 2002), Plaintiff stated that the maximum she could stand or sit in one place before she had to take a break and switch positions was three hours, an allegation the consultant found to be fully credible. Id. at 83-90.

On May 2, 2003, Plaintiff was seen at a clinic for a check up. She had "no complaints" and "no significant PMH [past medical history]." Her medications at the time included ibuprofen and Flexeril (a muscle relaxant).[2] Plaintiff was assessed with scoliosis and advised to follow up with physical therapy. Id. at 122-23. Plaintiff returned to the clinic approximately one year later, on May 29, 2003, for follow-up related to her low back pain. She had not had any physical therapy. Her pain was localized to the lumbar spine area and Plaintiff reported that ibuprofen "helped some." On physical examination it was noted that Plaintiff had pronounced thoracic scoliosis with the convex to the right. Plaintiff was told to return for follow-up after she had had some physical therapy. Id. at 120. On July 17, 2003, an appointment for physical therapy was scheduled for July 21, 2003. Id. at 119. Plaintiff was seen at the clinic again on August 2, 2003; her medications were again noted to be ibuprofen and Flexeril. There is no

---

[2]    Notation of another/other medications is illegible.

reference to Plaintiff having had physical therapy on July 21 or any other date.  Id. at 121.

**Evidentiary Hearing of August 28, 2006**

Plaintiff, who was represented by counsel, testified at the evidentiary hearing that she was 45 years old and a high-school graduate.  She stated that within the past 15 years, she had worked as a sales assistant and cashier.  Plaintiff verified her earnings in 2003, 2004, and 2005, testifying that for part of 2005 she worked at a motel, cleaning and in reservations, for  24 to 30 hours a week at $7.00 per hour.  Plaintiff testified that her scoliosis caused lower back pain that ran up her spine, that occasionally her legs hurt and felt numb, and that she had trouble sleeping because it was hard to find a comfortable position.  She acknowledged that she had never been diagnosed with sleep apnea.  Id. at 173-76.

Plaintiff testified that she took Tylenol-3 for her back pain and that this would help "for a little while."  She was not taking any medication for sleeping problems.  She testified that at one point she had been on ibuprofen (600 mg), but had not been back to see the doctor, apparently because she did not have health insurance.  She then testified that she had an appointment with a doctor for the day after the hearing.  Plaintiff stated that she also had vision problems and had been advised to get glasses, which would correct her vision to 20/20, but she had not done so because she could not afford to. When asked by the ALJ if there were any other problems that would keep her from

working full time, Plaintiff stated that her back pain made it hard for her to stand or sit for "a long period of time." Id. at 176-77.

Plaintiff testified that she could lift a gallon of milk, but that because of her back pain, she could stand or walk for only a total of two hours in an eight-hour day, and sit for only two or three hours during the course of a day. Plaintiff did not think she could handle full-time work, even if the job had a sit/stand option. She testified that she could push and pull a gallon of milk, stand balanced on level ground, climb about 12 steps, crawl, reach with her arms, handle large objects, and pick up small objects, but that she would have trouble walking up a ramp, stooping, bending, crouching, and getting up from a kneeling position. Id. at 177-80.

Plaintiff testified that for the past two years, she had been living by herself, since she moved out of her son's home. She stated that she had not had any medical treatment since the date of the last hearing (October 16, 2003), again noting that she did not have insurance and that she had a doctor's appointment the next day at a clinic. Plaintiff testified that to relieve her pain, she would lie down throughout the day, occasionally take a hot bath, and take two Tylenol-3 tablets. Id. at 180-83.

The ALJ asked the VE whether a person with Plaintiff's vocational factors (age, education, work experience) and abilities as determined, according to the ALJ, by the non-medical consultant -- the ability to carry up to 20 pounds occasionally and ten pounds frequently, sit for six hours out of eight, and stand or walk for two hours out of eight -- could perform any of Plaintiff's past jobs. The VE answered in the negative, but

testified that there were sedentary jobs that such an individual could perform, such as small parts assembler and receptionist/information clerk, jobs which were available in significant numbers in the local region.  Id. at 183-84.

The ALJ then posed a second hypothetical question to the VE, based on Plaintiff's testimony as to her physical abilities, including her testimony that she could stand or walk for two hours a day, and could sit for two to three hours, and did not think she could get through work with a sit/stand option.  The VE responded that there would be no jobs that such an individual (with Plaintiff's vocational factors) could perform on a full-time basis. Id. at 184-85.

**Post-hearing Evidence**

By letter dated May 10, 2007, addressed to the Appeals Council, Plaintiff submitted new evidence, including a medical report from a visit by Plaintiff to a health clinic on September 22, 2006.  Plaintiff's counsel stated in the submission letter that "significantly, [the report reflects] a diagnosis of depression" in addition to pain.  Id. at 12.  The September 22, 2006 report stated that Plaintiff presented to the clinic that day with complaints of depression, lack of sleep, and back pain.  Plaintiff reported to Esther F. Adade, M.D., that she had been depressed "for a while," had difficulty sleeping, felt sad "most times," and was currently financially unstable.  She also reported that her "severe" scoliosis had been causing "marked discomfort" in her back and neck.  Dr. Adade assessed scoliosis, backache, and depressive disorder.  She prescribed Motrin and

Flexeril for the backache, Celexa for the depression, and told Plaintiff to return in one month.  Id. at 13-15.

On May 10, 2007, Plaintiff also submitted several earlier reports from the same clinic, as follows.  On February 7, 2005, Plaintiff was seen for an annual (gynecological) examination.  Scoliosis was noted in her medical history.  Plaintiff's mental status was noted as "alert."  Id. at 20-23.  On August 29, 2006, Plaintiff again presented at the clinic for a routine (gynecological) examination.  Reportedly, Plaintiff felt "well with minor complaints."  Again her mental status was noted as "alert."  Id. at 16-18.  By letter dated June 10, 2006, addressed to the Appeals Council, Plaintiff submitted medical evidence showing that she was seen at a health clinic on April 18, 2007, for low back pain.  Id. at 9-11.

### ALJ's Decision of October 26, 2006

The ALJ reviewed Plaintiff's earnings record since 2000 and noted that in several months (during the last quarter of 2004 and the first quarter of 2005) she earned slightly more than $800/$830, the amounts that at the relevant times were considered by the Commissioner to constitute substantial gainful activity precluding eligibility for disability benefits.  The ALJ found that Plaintiff's scoliosis was a "severe" impairment, as that term was defined by the Commissioner's regulations, in that it significantly limited Plaintiff's ability to perform basic work activities.  The ALJ determined, however, that Plaintiff did not have a severe sleep disorder, and that Plaintiff's scoliosis, either alone or in

combination with other impairments, did not meet or medically equal any of the deemed-disabling impairments listed in the Commissioner's regulations.  Id. at 40-42.

The ALJ then found that Plaintiff had the RFC to perform work that required lifting no more than 20 pounds at a time and ten pounds frequently; and walking no more than two hours or sitting no more than six hours in an eight-hour workday.  The ALJ noted that Plaintiff testified that her back pain prevented her from sitting longer than three hours or standing or walking more than two hours before she needed to lie down to alleviate the pain.  But the ALJ found that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms was "not entirely credible."  Id. at 42.

In support of this finding, the ALJ referred to the lack of evidence that Plaintiff ever presented for medical treatment in any acute distress; and the presence of evidence that her gait was normal requiring no assistive device, that she was able to walk heel-to-toe, that she had no muscle atrophy, sensory loss, or weakness, that she retained full range of motion, and that she had normal straight leg raising.  In addition, the ALJ noted that Plaintiff did not pursue physical therapy as recommended to her in May 2003.  Furthermore, according to the ALJ, there was "not one indication in the medical record of [Plaintiff] ever requesting pain medication," and despite her testimony that she took Tylenol-3, there was no evidence of a prescription for that controlled substance.  Id.

The ALJ found that the lack of any evidence that Plaintiff attempted to get public or charitable financial aid to obtain medical treatment undermined her testimony that the paucity of medical evidence supporting her allegation of disability was the result of her

inability to pay for treatment.  The ALJ also found that Plaintiff's admission at the

hearing that she had been substantially gainfully employed from July 2005 through May

2006 "gravely" undermined her credibility regarding her allegation that she had a

debilitating condition since June 15, 2005.  Id. at 43.

Based upon his assessment of Plaintiff's RFC, the ALJ determined that Plaintiff

could not perform any of her past relevant work.  The ALJ noted that if Plaintiff could

perform the full range of light work, as that term was defined in the Commissioner's

regulations,[3] application of her vocational factors (age, education, work experience) to the

Commissioner's Medical-Vocational Guidelines ("Guidelines"), 20 C.F.R. Pt. 404,

Subpt. P, App. 2, would dictate a finding of not disabled.  The ALJ continued, however,

that the Guidelines could not be relied upon in reaching a decision because Plaintiff could

not perform the full range of light work, and so the testimony of the VE had to be

considered.  Based upon the VE's testimony that a person with Plaintiff's RFC, as

assessed by the ALJ, and vocational factors could perform the "representative" sedentary

jobs of  assembler of small parts and reception/information clerk, the ALJ concluded that

---

[3]    "Light work" is defined in 20 C.F.R. § 404.1567(b) as work that involves lifting
no more than 20 pounds at a time with frequent lifting or carrying of up to ten pounds; and
that might require a good deal of walking or standing, sitting most of the time, and some
pushing and pulling of arm or leg controls.  Social Security Ruling (SSR) 83-10 elaborates
that the full range of light work requires standing or walking, off and on, for a total of
approximately 6 hours of an 8 hour work day, while sitting may occur intermittently during
the remaining time; that the lifting requirement for the majority of light jobs can be
accomplished with occasional, rather than frequent, stooping; and that many unskilled light
jobs are performed primarily in one location, with the ability to stand being more critical than
the ability to walk.  SSR 83-10, 1983 WL 31251, at *6 (1983).

Plaintiff was not disabled from June 15, 2000, through the date of the ALJ's decision. The ALJ did not mention the evidence that had been submitted after the hearing.

## Post-decision Evidence Submitted to the Appeals Council

On July 27, 2007, Plaintiff submitted to the Appeals Council a short letter dated July 20, 2007, from Patricia Inman, M.D., addressed "To Whom it May Concern," and stating as follows: "[Plaintiff] has severe scoliosis and in unable to work at this time. She is in the process of evaluation by ortho." Id. at 7. Plaintiff also submitted Dr. Inman's Physician's Statement for Disabled License Plates/Placard indicating that Plaintiff could not walk 50 feet without stopping to rest due to a severe and disabling condition, and that Plaintiff was permanently disabled. Id. at 8. On January 18, 2008, the Appeals Council summarily denied Plaintiff's request for review," stating, "We have found no reason under our rules to review the [ALJ's] decision." The Appeals Council did not mention any of the evidence submitted after the hearing. Id. at 3-5.

## DISCUSSION

## Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must affirm the Commissioner's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005). This "entails 'a more scrutinizing analysis'" than the substantial evidence standard. Id. (quoting Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)). The

court's review "'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision'"; the court must "'also take into account whatever in the record fairly detracts from that decision.'" Id. (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)). Reversal is not warranted, however, "'merely because substantial evidence would have supported an opposite decision.'" Id. (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir.1995)). Rather, "if after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Owen v. Astrue, ___ F.3d ___, No. 08-1172, 2008 WL 5382317, at *4 (8th Cir. Dec. 29, 2008) (citation omitted).

When the Appeals Council has considered new and material evidence and declined review, the court "'must decide whether the ALJ's decision is supported by substantial evidence in the whole record, including the new evidence.'" Gartman v. Apfel, 220 F.3d 918, 922 (8th Cir. 2000) (quoting Kitts v. Apfel, 204 F.3d 785, 786 (8th Cir. 2000)).

To be entitled to benefits, a claimant must demonstrate an inability to engage in any substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Work which exists in the national economy "means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id. § 423 (d)(2)(A). Both the impairment and the inability to engage in substantial gainful employment must last or be

expected to last for not less than 12 months.  Barnhart v. Walton,  535 U.S. 212, 217-22 (2002).

The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If so, benefits are denied.  If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a).

If the claimant does not have a severe impairment that meets the duration requirement, the claim is denied.  If the impairment is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the impairments listed in Appendix I.  If the claimant's impairment is equivalent to a listed impairment, the claimant is conclusively presumed to be disabled.  Otherwise, the Commissioner asks at step four whether the claimant has the RFC to perform her past relevant work, if any.  If the claimant has past relevant work and is able to perform it, she is not disabled.  If she cannot perform her past relevant work or has no past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform any job that exists in significant numbers of other jobs in the national economy and that are consistent

with the claimant's impairments and vocational factors -- age, education, and work experience.

If a claimant can perform the full range of work in a particular category of work (very heavy, heavy, medium, light, and sedentary) listed in the Commissioner's regulations, the Commissioner may carry this burden by referring to the Guidelines, which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment. Where a claimant cannot perform the full range of work in a particular category listed in the Guidelines due to nonexertional impairments such as pain, the ALJ cannot carry this burden by relying exclusively on the Guidelines, but must consider testimony of a VE on whether there exist jobs in the national economy that a person such as the claimant could perform. Upon a claimant's request for review by the Appeals Council, the Appeals Council is required to consider new and material evidence submitted after the ALJ's decision if it relates to the period on or before the date of the that decision. 20 C.F.R. §§ 404.970(b).

**ALJ's Assessment of Plaintiff's RFC**

Plaintiff argues that the ALJ's decision is deficient because it pointed to no medical evidence in support of the ALJ's RFC assessment. A disability claimant's RFC reflects what she can still do despite her limitations. 20 C.F.R. § 404.1545(a). The "'most important issue'" in a disability determination is whether the claimant has the RFC "to do the requisite physical acts day in and day out, in the sometimes competitive

16

and stressful conditions in which real people work in the real world." Forehand v. Barnhart, 364 F.3d 984, 988 (8th Cir. 2004) (citation omitted). The ALJ's determination of an individual's RFC should be "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).

Although a claimant's RFC is determined at step four of the sequential evaluation process, where the burden of proof rests on the claimant, "the ALJ bears the primary responsibility for determining a claimant's" RFC. Id. at 1023. While an RFC is based on all relevant evidence, it "remains a medical question" and "'some medical evidence must support the determination of the claimant's [RFC], and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" Id. (quoting Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001)). The ALJ is therefore required to consider at least some supporting evidence from a medical professional. Id.; Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).

Here, the only assessment in the record before the ALJ regarding Plaintiff's functional abilities is the October 15, 2002 RFC assessment of the nonmedical source. While the Eighth Circuit has held that the opinion of a non-treating, non-examining physician (or other medical source) can satisfy this requirement, see, e.g., Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004), the Commissioner has not cited, nor has this Court found, any cases standing for the proposition that an ALJ may rely on the opinion

17

of a nonmedical source.  Thus, while there is little here in the record that detracts from the ALJ's findings, the fact remains that the RFC has no medical basis.  Having determined at step four that Plaintiff could not perform her past relevant work, the burden rested with the ALJ to support the RFC with proper medical evidence.  See id.; Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

Furthermore, in relying on the October 15, 2002 RFC assessment, the ALJ did not accept the source's opinion that Plaintiff needed to periodically alternate sitting and standing to relieve pain due to marked kyphoscoliosis, or the source's opinion that Plaintiff's allegation that the maximum she could stand or sit in one place was three hours before she had to take a break and switch positions was fully credible.

In addition, as noted above, the ALJ did not mention the post-hearing, pre-decision evidence submitted by Plaintiff, notably, the September 22, 2006 clinical report concerning Plaintiff's complaints of depression.  Nor did the Appeals Council address any of the post-hearing evidence submitted by Plaintiff.  Thus, the only medical evidence directly related to Plaintiff's functional abilities -- Dr. Inman's July 20, 2007 letter stating that Plaintiff could not work -- was never addressed.  The Court recognizes the limited evidentiary value of this letter.  First, although Plaintiff asserts that Dr. Inman was Plaintiff's treating physician, that fact is not established in the record.  More importantly, statements by a medical source, even a treating physician, that a claimant is disabled and cannot work "'are not medical opinions but opinions on the application of the statute, a task assigned solely to the discretion of the [Commissioner].'"  Krogmeier v. Barnhart,

294 F.3d 1019,1023 (8th Cir. 2002) (quoting <u>Cruze v. Chater</u>, 85 F.3d 1320, 1325 (8th Cir. 1996)). "Such statements simply are not conclusive as to the ultimate question of disability." <u>Cruze</u>, 85 F.3d at 1325 (citation omitted). In addition, the record does not contain the basis upon which Dr. Inman formed her opinion, nor at what point in time she believed that Plaintiff became disabled.

Nevertheless, Dr. Inman's letter should have at least alerted the Appeals Council of the need for medical evidence to support the assessment of Plaintiff's RFC. Under these circumstances, the Court believes that the better course in this case is to reverse the ALJ's decision and remand the case for reconsideration by the ALJ and an explanation of the weight to be given the evidence submitted after the evidentiary hearing. <u>See, e.g.</u>, <u>Bowman v. Barnhart</u>, 310 F.3d 1080, 1085 (8th Cir. 2002) (reversing and remanding for a medical assessment of the plaintiff's ability to engage in work-related activities); <u>Nevland</u> 204 F.3d at 858 (holding that the ALJ's reliance upon non-examining, non-treating physicians to form an opinion on the claimant's RFC does not satisfy the ALJ's duty to fully and fairly develop the record).

**<u>ALJ's Reliance on VE's Testimony</u>**

In a related argument, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the hypothetical question posed to the VE did not capture the full consequences of Plaintiff's impairment and thus the VE's response could not be relied upon in determining that Plaintiff was not disabled. In order to constitute substantial evidence upon which to base a denial of benefits, the testimony of a VE must

be in response to a hypothetical question which "captures the concrete consequences of the claimant's deficiencies." Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); testimony by a VE "based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision." Hillier v. Soc. Sec. Admin., 486 F.3d 359, 365 (8th Cir. 2007) (citation omitted). The question, however, need not include alleged limitations which the ALJ properly discredits. Randolph v. Barnhart, 386 F.3d 835, 841 (8th Cir. 2004).

As noted above, the question posed to the VE did not include the need for a sit/stand option, an option a medical source might well opine Plaintiff would require. See Johnson v. Barnhart, No. 04-3438-CV-W-HFS, 2006 WL 373896, at *8 & n.12 (W.D. Mo. Feb. 16, 2006) (citing SSR 83-12, 1983 WL 31253) (stating that where a claimant can perform sedentary work if a sit/stand option were available, a VE "should be consulted to clarify the implications for the occupational base")); cf. Hunt v. Astrue, 242 Fed. App. 376, 377 (8th Cir. 2007) (per curiam) (affirming ALJ's decision that the plaintiff was not disabled, based upon VE's testimony that the plaintiff could perform sedentary work with a sit/stand option).

## CONCLUSION

The Court concludes that the ALJ's decision that Plaintiff was not disabled is not supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be

**REVERSED** and that the case be **REMANDED** for further development of the record.

The parties are advised that they have ten days to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.


_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated on this 8th day of January, 2009.